LEMMON, Judge.
This case involves an automobile-pedestrian accident, in which Alexander Lu-kowski, the pedestrian, was killed. Lu-kowski’s widow and children have appealed from a judgment dismissing their suit against the automobile driver and her insurer after a trial on the merits.
The accident occurred on a clear, dry day at the intersection of Canal and Broad Streets in the City of New Orleans. Both streets were multilane thoroughfares, each divided by a wide area of neutral ground.
Karen Kerth, driver of the car, was traveling on Canal Street in the left lane (closest to the neutral ground), headed in the direction of the river (south). The traffic signal controlling the intersection was green for Canal Street traffic.
Lukowski had just disembarked from a transit bus at the uptown-river (southwest) corner of the intersection and proceeded to cross Canal Street, although the green signal showed for Canal Street traffic. At the point of the pedestrian crosswalk Canal Street consisted of a parking lane and three traffic lanes. Lukowski had almost completed the crossing, and the impact occurred just before he reached the neutral ground.
Plaintiffs admit Lukowski was contribu-torily negligent. Contending Miss Kerth was also negligent, plaintiffs urge their right to recovery on the basis of last clear chance.
Last clear chance is a doctrine which under certain circumstances excuses a plaintiff from his contributory negligence and allows recovery of damages caused by the defendant’s tort. A finding of negligence on the part of the defendant is essential before the doctrine applies. Since we affirm the trial judge’s finding that Miss Kerth was not negligent, we do not reach the issue of last clear chance in this case.
The record does not establish any breach of duty or substandard conduct by Miss Kerth. She approached the intersection in the left or inside lane at 20 to 25 miles per hour. There was a car ahead of her in the middle lane and also a car in the right *698 lane.[1] Because of these vehicles, Miss Kerth did not see Lukowski approaching from her right until he appeared in her lane. She instantly applied her brakes, setting down 18 feet of skidmarks. The left front of the car hit Lukowski just before the car came to a stop within the pedestrian crosswalk.
Plaintiffs principally assert that Miss Kerth should have seen Lukowski earlier and, traveling at her stated speed, could have stopped before making contact with him.
Miss Kerth’s two passengers verified that there was traffic in the middle and right lanes. A pedestrian, who got off the bus with Lukowski and waited at the corner as required by law, testified that he heard braking, but was unable to see Miss Kerth’s car at the time because cars in the middle and right lanes obstructed his view. While the pedestrian’s view of Miss Kerth’s approach was not exactly the same angle, as Miss Kerth’s view of Lukowski’s movement, the perspective was similar, and the pedestrian’s testimony served to that extent to corroborate Miss Kerth’s statement that these cars obstructed her view.[2]
Plaintiffs argue, however, that Miss Kerth was negligent because she kept only a “tunneled” view of her own lane, when by use of peripheral vision she could have seen Lukowski through the windows and windshields or across the hoods of the other cars. The legal issue is not what Miss Kerth could have seen, but rather what at all pertinent times she had a duty to see in the exercise of reasonable care.
As Miss Kerth approached the intersection she had a duty to generally observe the entire roadway ahead; she had no duty to look around obstructions or through windows and windshields for pedestrians crossing the street in heavy traffic against the light. Of course, once she observed the pedestrian, or once his presence became so obvious that she should have observed him, then a subsequent duty devolved upon her to take reasonable steps to avoid striking him.
As to the discharge of this subsequent duty, each case turns on its particular facts and circumstances. Under the facts established by the record in this case, when Lu-kowski reached a position where Miss Kerth in the exercise of reasonable care should have discovered him, she did discover him and in fact almost brought her car to a complete stop before striking him.[3] We cannot conclude from the record either that Miss Kerth should have seen Lukow-ski earlier or that, once she saw him, she could reasonably have taken any action other than that which she actually took.
The judgment is affirmed.
Affirmed.

. The record is unclear whether there were two ears (one ahead and one alongside of her) in the middle lane, or whether there was one car which was only partially ahead of her. Miss Kerth testified:
“ * * * There was a ear on the side of me, a car in front of me, a car — I mean, you know, there was cars all around; the neutral ground on the other side of me; there was nothing I could do.”

. We attach no determinative significance to the fact that the lead car in the middle lane did not strike Lukowski. The pedestrian was moving at all times and in fact almost cleared Miss Kerth’s lane also. Furthermore, the lead car in the middle lane was in a position to discover Lukowski earlier and to slow or take other steps to avoid striking him.

. Using Miss Kerth’s' statement as to her approximate position when she first observed Lukowski, plaintiffs referred to measurements of the entire intersection and designated the point as between 97 and 116 feet from the point of impact. Plaintiffs then argue, by reference to stopping distance charts, that Miss Kerth should have stopped within 69 to 91 feet.
Miss Kerth’s estimate of speed (well within the speed limit) was just that, an estimate. Furthermore, she stopped just beyond the point of impact. Under the circumstances of this case (where the charts indicate the required stopping distance is as much as 91 feet and the actual stopping distance is probably less than 100 feet), we decline to assign such mathematical exactitude to these charts, especially in the absence of evidence of other pertinent factors bearing on the determination of required stopping distance.